465 A.2d 995

**WILEY HOUSE, Appellant,**

v.

**Robert G. SCANLON, Secretary of Education, Appellee.**

Supreme Court of Pennsylvania.

Argued May 23, 1983.

Decided Sept. 26, 1983.

Reargument Denied Nov. 14, 1983.

230

John D. Killian, Harrisburg, for appellant.

John A. Alzamora, Asst. Atty. Gen., for appellee.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Commonwealth Court, 61 Pa.Cmwlth. 8, 432 A.2d 324, affirming the order of the Secretary of Education which denied and dismissed the application of Wiley House, a private school for socially and emotionally disturbed children, for status as an approved private school. Wiley House is licensed as a private school by the State Board of Private Academic Schools under the Act of June 25, 1947, P.L. 951, as amended, 24 P.S. § 2731 *et seq.*, and sought to become an approved private school under section 1376 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 13–1376, thereby becoming eligible for payment for educational services provided handicapped children assigned to the school by the Department of Education.

On June 14, 1978 a three-member evaluation team from the Department of Education visited Wiley House and determined that Wiley House did not meet the requirements necessary for such approval. Thereafter, the Secretary of Education issued a Show Cause Notice, directing Wiley House to show cause why its application should not be denied. Wiley House filed an answer to this notice and an administrative hearing was conducted, the result of which was that the hearing examiner recommended that the application for approved status be denied for two reasons: (1) Wiley House did not comply with various regulatory standards promulgated by the Department of Education; (2) Wiley House did not demonstrate a need or necessity for its program, as required by the regulations of the Department of Education.

The Secretary, with minor amendments, accepted the examiner's report, and Wiley House appealed to the Commonwealth Court. Commonwealth Court, citing three of forty-two findings of fact made by the hearing examiner, affirmed the Secretary. In view of its disposition of the case on the issue of noncompliance with required standards, Commonwealth Court did not address the question of whether Wiley House had shown a need for its program. Wiley house petitioned for allowance of appeal and we granted allocatur.

Our standard of review in this case is provided for by statute at 2 Pa.C.S.A. § 704 as follows:

Disposition of appeal

The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that *the adjudication is in violation of the constitutional rights of the appellant,* or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, *or that any finding of fact made by the*

*agency and necessary to support its adjudication is not supported by substantial evidence.*

Emphasis supplied. Wiley House claims that the Commonwealth Court erred in two respects: (1) the court denied Wiley House due process by reviewing only three of the forty-two findings of fact made by the hearing officer, and concluding that these findings were legally sufficient to support the Secretary's order; (2) these findings of fact are without basis in law or support in the record. For the reasons that follow, we affirm.

▪ The legislature has charged the State Board of Education with the responsibility for promulgating "standards and regulations" for the training and education of handicapped children. 24 Pa.C.S.A. § 13–1372(1). Further, the Department of Education is charged with the responsibility of licensing approved private schools in the Commonwealth. The licensing standards adopted by the Board which are relevant to this case have been promulgated as regulations and are published in the Pennsylvania Code.

The first argument of Wiley House is that the Commonwealth Court erred in considering only three of forty-two findings of fact made by the hearing examiner, thus depriving Wiley House of due process of law. Secondly, Wiley House contends that the three findings at issue are without support in fact or law.

▪ As a general principle, a court reviewing an administrative decision adjudicates the case before it in accord with due process even if it does not review all the findings of an administrative body if it reviews findings which are necessary and sufficient to support the adjudication. Put another way, in a case involving an application for agency approval, where A, B and C are required for approval, if the applicant has not met condition B, there is no need to review A and C. In the present case, Wiley House did not meet at least three requirements for Department of Education approval, and therefore, regardless of its excellence in other areas, it remains deficient with respect to at least some necessary elements of approval. There was, therefore, no

due process violation in the court's failure to discuss all forty-two findings.*

The three findings which the Commonwealth Court did discuss and which Wiley House claims are without foundation in fact or law are as follows:

13. The student interns used in the Wiley House classrooms do not provide full-time supportive assistance to the classroom teachers as contemplated by the Special Education Standards.

23. Wiley House lacks an immediately available supervisor or other competent and trained person to handle a student in a period of crisis and to remove that student, if necessary, from the classroom.

25. Wiley House's behavior management systems do not work effectively to permit its classroom teachers to control classroom conduct adequately and to prevent pupil crises from interfering with instruction.

■■■ As to finding 13, that there is no full time supportive assistance in the classroom, the Secretary and the Commonwealth Court relied on the Standards for Special Education at Pa.Code § 341.57(b):

*Paraprofessionals.* Paraprofessional and supportive personnel shall be employed in accordance with specific program needs.

Although Wiley House argues that this regulation is inapplicable because it was enacted after Wiley House applied for approval, the argument is specious since the regulation was in effect at the time of the evaluation. Moreover, there is

---

* It is conceivable, of course, in a hypothetical case, that an applicant, in not satisfying condition B, but in satisfying all other necessary conditions, may have substantially met all necessary and sufficient conditions for approval where condition B were trivial or relatively unimportant in the regulatory scheme. Failure of an agency to grant approval in such a case may be subject to challenge on due process grounds, but that is not the present case. In the present case, the failure of Wiley House to have adequate staff, adequate supervision of classroom teachers, and to provide orderly classroom instruction goes to the heart of the regulatory scheme: to ensure that approved schools are able to provide adequate and necessary training and education to handicapped children.

substantial evidence of record in support of the finding. As the hearing examiner wrote:

The . . . language [of 22 Pa.Code 341.57(b)] does not mandate instructional aides in all programs. Other regulations, relating to funding, also encourage the use of instructional aides. There seems to be some confusion as to whether reimbursement for the use of instructional aides is available for small classes. (cf. N.T. 122 and N.T. 564). Regardless of the express mandate of any of these regulations, however, it should be obvious that any teacher working with severely disturbed children, such as those educated at Wiley House, should have the support and assistance of some sort of aide. The [Department of Education] Evaluator Nancy Anderson [who visited Wiley House] demonstrated very clearly the need for such back-up and assistance in her testimony (N.T. 308). It should be clear here that Wiley House's two classroom teachers require some sort of back-up and assistance on a routine basis.

It is our determination that this finding is supported both in law and by sufficient evidence.

As to finding 23, that there was no immediately available supervisor, both the lower court and the hearing officer relied on the Standards for Approved Private Schools at 22 Pa.Code § 171.22(b):

*Supervisor.* Each approved private school shall have at least one supervisor with public school certification appropriate to his assignment.

Wiley House argues that one of its teachers has the appropriate certification and serves as a supervisor, as required under the regulation. The hearing officer determined, however, that because this teacher is assigned a class of his own, he cannot effectively perform as a supervisor:

If we apply the observations of the three evaluators to the problems they found at Wiley House, it soon becomes evident that the lack of a classroom supervisor who is free to perform his functions in a full-time manner, is a deficiency of Wiley House which prevents their meeting

the Approved Private School standards contained in Section 171.22(b) and set forth above. This is particularly important when we note that Wiley House's primary grade classroom teacher was only completing her second full year of teaching experience at the time of the evaluation (N.T. 739).

There is, therefore, sufficient evidence of record to indicate that Wiley House was not in compliance with the requirement that it have a supervising teacher, as this requirement has been interpreted by the Department of Education.

Concerning the argument that the Secretary's interpretation of the regulation requiring a supervisor is unreasonable and unfair, the standard of review applicable to the validity of an administrative agency's interpretation of its own regulations is found in *Commonwealth of Pennsylvania Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 422 A.2d 480 (1980):

> First, "[i]n construing administrative regulations, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) quoting *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Second, the regulations "must be consistent with the statute under which they are promulgated."

492 Pa. at 81, 422 A.2d at 482. Since the department's interpretation of the requirement for a supervisor, in these circumstances, as an immediately available supervisor, is neither plainly erroneous nor inconsistent with the Public School Act, we cannot conclude that the Commonwealth Court's affirmance of this finding was in error.

As to finding 25, that Wiley House did not have an adequate behavior management system, the hearing officer wrote:

> The Special Education Standards, and the Department of Education regulations generally, do not set an express standard for the creation and implementation of a behav-

ior management system or any other express standards for maintenance of order in the classroom. Similarly, they do not set out an express standard for competence of classroom instruction. However, it is only obvious that an Approved Private School, just as any other school, exists to instruct its pupils and that the regulations do clearly set a goal to return all such students to the regular classroom (22 Pa.Code 341.21). Equally obviously, in order for effective instruction to be given, there must be order in the classroom; in order to obtain order in a classroom of severely emotionally disturbed children, there must be some method or system to encourage their orderly control and to otherwise manage their behavior.

We agree with the Commonwealth Court that where the Secretary's finding was based on testimony that there was a lack of order in the classrooms, including unruly behavior, fighting, and children roaming around the room while the teacher was engaged elsewhere in the room, there is sufficient evidence upon which to base the finding in question. Furthermore, because the Secretary's interpretation of the regulations and the statute as calling for an ordered environment is not plainly erroneous or inconsistent with the Public School Act, the Secretary's interpretation must be affirmed.

It is not for a reviewing court to usurp the functions of administrative agencies it is called upon to review. We must adhere to the standards of review of agency decisions set out herein. We cannot help but observe, however, that one of the functions of this particular lawsuit may have been to clarify, perhaps for both parties, what is required for an approved status at this particular school. In keeping with the humanitarian purpose of provisions of the Public School Act relating to handicapped children, it would be encouraging to think that the Department of Education and private schools seeking an approved status could work in harmony when such an application has been made. We are, of course, unaware of whether Wiley House might have remedied the deficiencies in its program had it known that

such would be fatal to its application. Perhaps it would have remedied these deficiencies. In any event, our affirmance in this case is without prejudice to any further application which may be made by Wiley House for status as an approved private school.

Affirmed.

NIX, J., did not participate in the decision or consideration of this case.

LARSEN, J., concurs in the result.